**DOCUMENT FILED UNDER SEAL**

FILED-ED4

NOT TO APPEAR ON THE PUBLIC DOCKET 11 :4 Hd 81 130 20

CLERK J.
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOC~~~
OCT 24 2002

|  |  |  |
|---|---|---|
| PLAINTIFFS A, B, C, D, E, F, and OTHERS SIMILARLY SITUATED, WEI YE, and HAO WANG, | ) ) ) ) |  |
|  | ) | Civil Action No. |
| Plaintiffs, | ) ) |  |
| v. | ) ) |  |
| JIANG Zemin and Falun Gong Control Office (A.K.A. Office 6/10), | ) ) ) |  |
|  | ) | JURY DEMAND |
| Defendants. | ) ) ) ) |  |

**COMPLAINT**

**CLASS ACTION**

Plaintiffs, on behalf of themselves and others in the designated class of injured parties similarly situated, complain and allege as follows:

**I. PRELIMINARY STATEMENT**

1.  This is a civil action for compensatory and punitive damages for torts committed in violation of international and domestic law, that is instituted pursuant to specific statutory authorization, namely the Alien Tort Claims Act (28 U.S.C. § 1350) and the Torture Victims Protection Act (106 Stat. 73 (1992)), as detailed below. Plaintiffs in this action include three individually identified residents of the People's Republic of China or refugees from that country now living in different nations around the world, including the United States. All were subjected to torture, genocide, and other major human rights abuses as current residents and citizens of the Peoples'

Republic of China, together with their immediately affected family members, or as visitors to that country, as well as all others who are similarly situated or affected. All these Plaintiffs are practitioners of the Falun Gong who, while residents of the People's Republic of China or present in that jurisdiction and thereby subject to the jurisdiction and authority of the Defendant JIANG, as Chair of the People's Republic of China, of the Central Committee of the Chinese Communist Party, and of the Central Military Committee of the People's Republic of China, as well as to the jurisdiction and authority of the Falun Gong Control Office (Office 6/10). All have suffered and been threatened with the most severe forms of persecution and abuse violating their fundamental human rights, at the hands of, and with the concurrence, support and supervision of the named Defendants acting in their official and quasi-official capacities. Individual plaintiffs also include U.S. citizens or alien residents of the U.S. who were purposefully, intentionally, subjected to discrimination based on their belief in the spiritual practice of Falun Gong and their co-extensive attempt to protest peacefully the persecution of Falun Gong in China during Defendant JIANG's visit to Iceland in June of 2002. All of these suffered discrimination and violations of their fundamental human rights, at the hands of, and with the concurrence, support and supervision of the named Defendants acting in their official and quasi-official capacities.

2.      This action is instituted against Defendant JIANG Zemin, and the office that he helped to establish to organize and carry a systematic campaign of persecution, torture, and genocide against Falun Gong. Defendant JIANG is presently serving, since March of 1993, as Chair of the People's Republic of China and Chair of the Central Military Committee of the People's Republic of China. Since September 1997, JIANG also has served as Secretary General of the Central Committee of the Chinese Communist Party of the People's Republic of China. In these capacities, and since June of 1999, the Defendant has designed, ordered, implemented and directed a program of eliminating the practice of Falun Gong in China. Defendant JIANG's actions resulted in selective murder, disappearance, widespread torture and genocide against thousands of practitioners of Falun Gong, as well as cruel, inhuman and degrading treatment, arbitrary arrest and detention without trial of thousands.

3.      On June 10, 1999, Defendant JIANG officially established and authorized the clandestine and illegal operation of the Falun Gong Control Office, a subdivision of the Central Committee of the Chinese Communist Party, which since its inception has been the only political party in China. The Falun Gong Control Office is also referred to in China as "Office 6/10," to commemorate the date of its official creation (June 10, 1999). Both Defendant JIANG

Page 2

and Defendant Office 6/10 have played key architectural roles in the suppression of the spiritual practices of Falun Gong in China. By their consistent and thoroughgoing policy, and extensively and brutally applied and officially mandated, albeit unlawful, campaign of persecution against Falun Gong, they have ordered and authorized the arrest, detention, torture, and arbitrary execution of persons who refuse to renounce their spiritual belief in and practice of Falun Gong, as well as those who demonstrated peacefully and publicly against these acts of repression, irrespective of their spiritual beliefs. While technically not a government agency, Office 6/10, as a practical matter, has been operating in a quasi-official capacity under Defendant JIANG's illegal mandate, to organize and direct the campaign of persecution against Falun Gong, with the support of, on behalf of, and in furtherance of the goals of Defendant JIANG, and other high ranking officials of the government of China.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction over the claims brought by Plaintiffs by virtue of 28 U.S.C. section 1350, incorporating provisions of the Alien Tort Claims Act and the Torture Victims Protection Act, which provide for federal jurisdiction and a cause of action "for any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States," as well as for acts of torture committed abroad against either U.S. citizens or citizens of other nations.

5. A separate and additional basis for jurisdiction is 28 U.S.C. § 1343(4), which provides for federal court jurisdiction in situations where damages or equitable or other relief is sought under acts of Congress providing for the protection of civil rights, as well as under 28 U.S.C. § 1331, since this case arises "under the Constitution, laws, or treaties of the United States," and raises significant federal questions under Constitutional provisions, statutes and international treaties ratified by the U.S., including 42 U.S.C. § 1985.

6. In this case, the actions of the Defendants constitute violations of some of the most deeply held and universally acknowledged human rights that are enshrined in a number of widely ratified international treaties, as well as being firmly accepted parts of customary international law, and jus cogens. These include the right

to not be arbitrarily arrested, imprisoned and deprived of life; the right to not be subjected to torture and genocide; the right to hold and exercise views and beliefs freely and without interference; the right to liberty and security of the person; and the right to associate with others and to practice religious and spiritual beliefs without restriction. The exercise by the Plaintiffs of these internationally recognized human rights, enshrined in both treaty and customary international law, and universally recognized as part of the law of nations, has been seriously and maliciously abridged by the policies and actions of the Defendants and their co-conspirators acting under color of law and in their official and quasi-official capacities, clearly outside the scope of their lawful and legitimate authority. Among the specific human rights treaty standards violated by the Defendant are the Convention Against Torture, the Covenant on Civil and Political Rights, the Genocide Convention, and the United Nations Charter. Many of these same standards are embodied in customary international law and in jus cogens, as articulated in the Universal Declaration of Human Rights. Each of these standards, and how they have been violated by the actions of the Defendants and their co-conspirators to the detriment and injury of the Plaintiffs, is described and explained in the text of the complaint, below, beginning with paragraph 29. These violations of international law, together with injuries inflicted upon the alien Plaintiffs as a result of these violations, place this legal action within the parameters of the jurisdictional standards spelled out in 28 U.S.C. § 1350 embodying the provisions of the Alien Tort Claims Act and the Torture Victims Protection Act, as well as in 28 U.S.C. § 1343(4), 28 U.S.C. § 1331, and 42 U.S.C. § 1985.

7.      Defendant OFFICE 6/10 was established as a subdivision of the Central Committee of the Chinese Communist Party by JIANG Zemin on June 7, 1999, and officially set up by the Central Committee of the Chinese Communist Party on June 10, 1999 per JIANG's order. As a subdivision of the ruling party in China, and not itself an official government agency, it acts under color of law and carries out law enforcement operations of a governmental nature. Acting under the command and control of defendant JIANG, chair of the People's Republic of China, the office employs and supervises government officials and other public agencies, such as media communications and law enforcement, to carry out a campaign of murder, torture, terrorism, rape, beatings, and destruction of property against members of Falun Gong and their families. As such, its actions constitute major abuses and violations of a number of international laws and treaties. These violations of international law, together with the injuries inflicted upon the Plaintiffs as a result of these violations, place this legal action against the Defendants within the provisions of the Alien

Page 4

Tort Claims Act and the Torture Victims Protection Act.

8.      Defendant JIANG and defendant Office 6/10, as represented by defendant JIANG, will be physically present in the United States in October of 2002, availing themselves and their property of the security and sanctuary of the United States and the state of Illinois, engaging in banquets, meetings, and other activities. The fact that the Defendants are neither citizens nor permanent residents of the United States, but that Defendant JIANG, on behalf of himself and as an agent of his political party's Office 6/10, and other senior officers of 6/10 are only temporary visitors in this country does not deprive the Court of jurisdiction. The very nature of the Alien Tort Claims Act and Torture Victims Protection Act provisions authorizing this type of civil action in federal court recognize that many defendants or potential defendants in these cases, as aliens committing torts abroad that involve violations of international law, will be in the United States and subject to the jurisdiction of our federal courts only on a temporary basis. Moreover, among the purposes of Defendant JIANG's visit, as reflected in a banquet and other activities to be held in his honor in Chicago, Illinois, is the furtherance of the goals of Defendant JIANG and the Office 6/10 to carry out their campaign of persecution against Falun Gong. These activities include a discussion of topics relevant to the ban of Falun Gong in China.

9.      Venue is properly vested in the Federal District Court for the Northern District of Illinois pursuant to the requirements of 28 U.S.C. §§ 1391 (b) and (d), as a location within the United States where the Defendants and/or their agents will be not only  personally located during their current visit to this country, but present as participants in meetings to further their own agenda regarding, inter alia, the ban of Falun Gong in China, and wherein Defendant JIANG, both for himself and as an agent for Office 6/10 can be personally served with process regarding the initiation of this lawsuit pursuant to the requirements of Rules 4 (c)(1), (e), and (h) of the Federal Rules of Civil Procedure.

10.      Jurisdiction over Defendant JIANG, as the designated head-of-state of the People's  Republic of China, is authorized and recognized as an exception to the head of  state immunity doctrine and to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 et seq., by incorporation of the principles of the Convention Against Genocide which excludes from immunity acts of genocide by any and all government officials, including heads of state, and by other international standards that recognize the culpability of heads of state and other government officials for

Page 5

major abuses that violate jus cogens standards of international law, and therefore commit acts which reside beyond the limits of their legitimate and legal authority as head of state. Likewise, the Torture Victims Protection Act covers any and all officials committing torture, whatever their position, whether they are current or former officials. This case is not against the Government of China. Nor is it against any legitimate and lawful act of its officers so as to merit either sovereign immunity or head of state immunity as a defense to this Court's jurisdiction over this action.

## III. PARTIES

### A. *Plaintiffs*

11.     Plaintiffs are members of and represent a designated class of Falun Gong practitioners who have resided in China in the past, or are currently residing in the Peoples' Republic of China. While under the jurisdiction and control of Chinese authorities, they have been subjected to various forms of persecution and abuse, amounting to serious violations of their human rights, that are associated with the policies and actions of the Defendants and other high-level government officials with whom they have conspired, taken in their official and unofficial capacities, aimed at punishing the Plaintiffs for their Falun Gong beliefs and practices, preventing them from engaging in these practices, and eliminating the Falun Gong as a spiritual movement. Individual plaintiffs also include U.S. citizens or alien residents of the U.S. who were purposefully, intentionally, and improperly prevented from boarding and embarking on their flights to Iceland on Icelandair to protest the persecution of Falun Gong in China during Defendant JIANG's visit to that country in June of 2002 because of the practices and policies of the Defendants, in concert with other high ranking officials of the People's Republic of China.

12.     Please note that alphabetic designations have been used to substitute for the specific identities of some of the individually named plaintiffs in order to protect them and their families, some of whom remain within the jurisdiction of China, from reprisal. For these Plaintiffs, a very real and substantial risk exists that the Defendants would seek to inflict punishment or coercion on the Plaintiffs and/or their families as a result of their filing this lawsuit and bringing public exposure and criticism to the Defendants' policies and practices regarding the intimidation of Falun Gong practitioners, and their efforts to exterminate all persons who refuse to relinquish their belief in and practice of Falun Gong. The identities of some of the individual Plaintiffs providing notarized or witnessed affidavits

Page 6

prepared for this complaint have been redacted from the documents that will be available to the Court per request. A motion for the Court to authorize withholding of the specific identities of the individual Plaintiffs in the text of the complaint, and in their attached affidavits, will be filed soon after the filing of this complaint. Counsel for Plaintiffs would be pleased to provide the Court any additional identifying information that may be needed, including unredacted copies of the Plaintiffs' statements, so long as the identities of the Plaintiffs are not made known to the Defendants, or made accessible to any other officials or agencies in the People's Republic of China responsible for the campaign of persecution against Falun Gong, through any other means.

13.     Plaintiff A, male aged 39, is a U.S. citizen residing in the state of Pennsylvania. He is bringing this complaint on behalf of his deceased brother John Doe, male aged 40, who was a citizen of China and who resided in the City of Shanghai in Shanghai Province. In March, 2000, while he was a visitor to the City of Beijing in Beijing Province Plaintiff A's brother was arrested by police and incarcerated along with other Falun Gong practitioners in the Qingdong State Farm, a prison camp, in the City of Shanghai. After having been incarcerated for more than one year, Plaintiff A's brother died from physical injuries, between the dates of April 1 and April 14, 2001. Plaintiff A's parents identified his body on the evening of April 14, 2001. The reason for Plaintiff A's brother's arrest, detention, mistreatment and wrongful death due to abuse in police custody is due to his belief in and practice of Falun Gong and his refusal to renounce his personal belief in Falun Gong.

14.     Plaintiff B, is a male aged 31, who currently resides as a resident alien outside of China. He is a graduate student at Trinity College in Dublin, Ireland. He is a citizen of China whose home is in the City of Changchun. He was a visitor to the City of Beijing in Beijing Province beginning in December 1999 during Christmas holiday. When he went to the Office of Appeals in Beijing to lawfully present his views in support of Falun Gong, the police arrested him and escorted him along with other detainees to the police bureau in the City of Changchun. Police confiscated his passport and did not allow him to return to Ireland to continue his studies.

During March 2000, Plaintiff B returned as a visitor to the City of Beijing. On May 13, 2000, police arrested him from the school dormitory of a friend whom he was visiting. Police detained him for more than one month at Haidian Detention Center in Beijing during which time inmates, at the direction of police, physically abused him, forcefully holding him down and force feeding him with liquids. This dangerous mistreatment caused the death of

Page 7

another Falun Gong practitioner, Ms. Yulan Mei, when she was held in another Beijing detention center.

After more than a month's detainment in the Haidian Detention Center, police detained and incarcerated Plaintiff B in the Tuan He Labor Camp in the City of Beijing for 22 months without the appointment of legal counsel, without a formal trial, without notice of grounds of and for his arrest, without any other due process rights afforded him by the Constitution of the People's Republic of China. During this period of detention, Plaintiff B was badly beaten and tortured by police on multiple occasions. In one instance, Plaintiff B was tied down on a wooden bed frame and shocked simultaneously with six electric batons, each transferring over 10,000 volts, causing severe pain, spasms and mental suffering. The reason for Plaintiff B's repeated arrest, detention and torture is his belief in and practice of Falun Gong and his refusal to renounce his personal belief in Falun Gong.

15.    Plaintiff C, a female, aged 47, citizen of China currently residing outside China. On July 26, 2000, Plaintiff C traveled to Beijing as a visitor. On July 29, plain clothes police identified her as a Falun Gong practitioner, arrested her and detained her in the Liaison Office of Liaoning Province in Beijing. On July 30, Police escorted her back to Liaoning Province and detained her in the Longshan Detention Center in Shengyang City. In Longshan Detention Center, police beat and tortured her with electric batons on numerous occasions and also force-fed her on numerous occasions causing severe pain and harm. (Forced feeding caused internal bleeding and nearly caused asphyxiation on different occasions.) She was also beaten and force-fed in Dabei Prison. On September 25, 2000, she was moved to the notorious Massanjia Labor Camp in Liaoning Province and imprisoned. In the Massanjia Labor Camp, she experienced repeated and increased physical torture as well as continued forced feeding, often tortured by six people simultaneously. Prison guards and inmates, under direct pressure from higher authorities beat and tortured her day and night, causing injuries, and verbally threatened to kill her if she did not renounce her belief in Falun Gong. This treatment lasted for seven months. On April 19, 2001 police moved her and nine other Falun Gong practitioners to the Shenyan Zhangshi Labor Camp, where she was imprisoned and not allowed to sleep for weeks at a time. On May 10, 2001 police moved her to the Shenxin Labor Camp. She was again tortured and force-fed, and her life was verbally threatened. She again sustained physical injuries and vomited blood for three days. Shortly thereafter, authorities at the Shenxin Labor Camp released her anticipating that she would die and that they would be held accountable for her

death. Plaintiff C is now attempting to gain refugee status to take up residence in Europe or the United States.

16.     Plaintiff D, a female aged 53, currently resides as a resident alien outside of China. She was a citizen and resident of the City of Da Lian in Liao Ning Province of the Peoples' Republic of China through the latter part of 2000, during the period that the Defendants directed and implemented the campaign of persecution against Falun Gong in Liao Ning Province and elsewhere in China. She was arrested and detained for long periods on two occasions during this period of time in 1999 and again in 2000, and subjected to torture while in detention. The reason for her arrests, detentions and tortures was her participation in the Falun Gong spiritual movement, and her belief and practice in Falun Gong related associations, observances and activities.

17.     Plaintiff E is a female who currently resides as a resident alien outside of China. She is bringing this complaint on behalf of herself and her parent, who currently resides in Liao Ning Province in China and is incarcerated in a prison labor camp in that Province. Plaintiff B's parent was arrested twice, first in 2000 and again in 2001. Her parent was detained for an extended period in 2000, and currently remains in detention and subject to a prison sentence as a result of her Falun Gong beliefs and activities. Her Parent currently is incarcerated in Masanjia Labor Camp in Liao Ning Province, a prison facility with a reputation for particular brutality. In that facility, in October, 2000, 18 female Falun Gong practitioners were stripped and thrown into a male prisoners' cell. During their stay in Masanjia Labor Camp Plaintiff B's parent has been subjected to physical abuse, torture and highly degrading treatment and punishment, including arbitrary, long-term detention and deprivation of liberty and security of the person because of her spiritual beliefs and her association with the Falun Gong spiritual movement.

18.     Plaintiff F is a 39 year old male and former resident of a municipality in Liao Ning Province now residing as a refugee outside of China. He was arrested, detained for a number of days and beaten brutally by the police with chains and an electric baton when he went to Beijing in 1999 to support Falun Gong practitioners and protest their repression. In April, 2000 he was arrested a second time in Liao Ning Province. He was again brutally beaten to unconsciousness, with blood coming down though his mouth and nose, and his foot badly mangled. While in detention for an extended period of times he was beaten and tortured repeatedly, including being hung up on water pipes for three days.

Page 9

19. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the individual plaintiffs identified above are joined in this complaint by other members of the class of adversely affected individuals whom they represent, namely past or present residents of the Peoples' Republic of China, or visitors to that country, during the periods that the Defendant JIANG designed, ordered, implemented and supervised the persecution of Falun Gong in China, both nationally and locally, through the illegal activities of Office 6/10. Defendant JIANG in concert with other high ranking officials of the Office 6/10, continues to monitor and control the 6/10 Office which is itself in charge of carrying out the persecution and repression of the Falun Gong spiritual movement and its practitioners since June 1999. Also of relevance herein in the fact that Defendant JIANG exercised supervisory authority over the operations of Office 6/10, as the Chairman of the People's Republic of China, the Chairman of the Central Committee of the Military of the People's Republic of China, and Secretary General of the Communist Party's Central Planning Committee, the three most powerful political positions in China, during the entire period that the campaign of illegal persecution of Falun Gong has occurred. Plaintiffs, individually and as members of the class they represent, are practitioners or believers in the Falun Gong spiritual movement, who, because of those beliefs and associations have either been subjected to grave abuses of their internationally recognized human rights - including arbitrary arrest, imprisonment, torture, genocide, and deprivation of life, liberty, or security of the person - or have been threatened with such violations, through the actions of Defendant JIANG, other high level government officials, and Defendant Office 6/10, with whom Defendant JIANG has conspired to carry out these acts and objectives.

20. Other members of the class of adversely affected individuals have been joined through this class action, pursuant to the requirements of Rule 23(a), because the class is too numerous to permit joinder of all members, there are questions of law and fact common to the class, the claims of the representative parties are typical of the claims of the class, and the representatives parties will fairly and adequately protect the interests of the class. Moreover, pursuant to the requirements of Rule 23(b) separate actions would create a risk of inconsistent adjudications affecting the interests of all members of the class, and the nature of the circumstances is such that there are common questions of law and fact that predominate over any questions affecting only individual members, making a class action the appropriate method for adjudicating the issues presented. In addition, the physical location and circumstances of many members of the class, namely their being located in China, and the fact that many of them currently are being held in

arbitrary and unlawful detention in China, as well as the threat to their and their families' safety associated with identifying them as individual plaintiffs, renders their joinder as individual and named plaintiffs inappropriate and impractical if not impossible.

21.     Plaintiff Wei Ye, a citizen of the People's Republic of China, currently is a resident alien living in the U.S. in Chicago, Illinois. On June 11, 2002, he, along with two other colleagues who practice Falun Gong, arrived at the Minneapolis Airport at approximately 6:00 p.m. in order to board a flight to Iceland on Icelandair flight number FI652, for which he had purchased a ticket and held reservations obtained through Orient Express Travel Agency in New York City. He traveled by car to the airport from Chicago, which involved an 8-hour drive. He planned this trip to coincide with the visit to Iceland of President Jiang of China in order to peacefully express his views in opposition to the campaign of persecution against the Falun Gong in China, and to carry out meditation and other spiritual exercises in an effort to experience solidarity with his colleagues in China who were being subjected to abuse, and to lend a spiritual voice in support of positive change. When they arrived at the check-in counter of Icelandair Mr. Ye was informed by Ms. Jessica Ginger, station manager for the Airline, that he and his colleagues were "on the list and not allowed to board the plane." When they asked for an explanation they were shown two letters. The first was from Icelandair and the second was from the Ministry of Justice of Iceland. They indicated that the Ministry of Justice had directed the Airline to refuse passage to Iceland to those on the restricted passenger list during the period around President Jiang's visit to Iceland. Upon information and belief, the "list" was assembled, compiled and circulated for this purpose by Defendants and other officials in China to prevent any protest in outside of China pf the persecution of Falun Gong in China. Mr. Ye stayed in the airport that evening and on the following day again attempted to convince the Airline to honor the ticket they had already sold to him. But again on June 13th, he was not permitted to board the plane. He drove back to Chicago that evening. He again drove back to the Airport in Minneapolis the following day, on June 14, when he heard that some Falun Gong practitioners who had initially been denied passage had subsequently been able to board later flights. Again, he sought to convince the Airline personnel to honor his ticket. But once again, he was denied boarding by the Airline, and was forced to make the 8-hour return trip home for the second time.

22.   Plaintiff Hao Wang is a U.S. citizen and a 17 year-old high school student attending Phillips Academy

in Andover, near Boston, Massachusetts. In May, 2002, he and his family planned a trip to Iceland to tour the country, and to meet with other Falun Gong practitioners to share and practice their deeply held spiritual beliefs in conjunction with the scheduled visit of the President of China to that country. They purchased tickets on Icelandair flight number FI632 departing on June 10, 2002. The tickets were purchased and the reservations made through Icelandair's on-line travel service at the www.icelandair.com website. When he and his family arrived at Logan International Airport in Boston he was given a letter to sign stating that he was not going to visit Iceland to protest China's treatment of Falun Gong practitioners. As a student of history and a citizen of a democratic country, he was deeply troubled by having to sign this type of "oath" agreeing to surrender his constitutional and human rights in order to be permitted to board an airplane. He considered these demands "un-American," especially the requirement that he reveal what his religious and spiritual beliefs were, and how he planned to practice them. Nevertheless, he signed the statement in order to continue his trip. But the invasiveness did not end there. When he arrived at Customs in Iceland each member of his family as well as other Falun Gong practitioners and those who appeared of Asian ethnicity were separated out by airport security personnel and individually interrogated. They were asked "whether or not they studied Falun Gong and whether or not they were members of Falun Gong." After these interrogations they were taken to another room, not permitted to speak among themselves, and interrogated for an additional five hours. After these interrogations those whose names were not on the restricted list were permitted to enter Iceland. Those whose names were on the list were denied entry, irrespective of the answers they provided to Customs and security personnel concerning their Falun Gong affiliation, and were told that they would be deported. Upon information and belief, the "list" was assembled, complied, and circulated for this purpose by the Defendants to prevent any protest outside of China of the persecution of Falun Gong in China. Those on the list were placed in detention in a schoolhouse near the airport for a period of 18 hours. Finally, on June 12, 2002, after a long and difficult ordeal, they were released and permitted to enter Iceland. They were told that there had been a change in policy to allow them to enter the country because of a groundswell of protest and support from the Icelandic people and the press concerning the Government of Iceland's exclusionary and discriminatory policies.

### B. *Defendants*

23.     Defendant JIANG is a citizen and resident of the People's Republic of

China. As Secretary General of the Central Committee of the Chinese Communist Party of China since September 1997, as Chair of Central Military Committee of the People's Republic of China and as Chair of the People's Republic of China, since March of 1993, Defendant JIANG exercises executive authority over the Central Committee of the Chinese Communist Party, and over all high ranking officials and organs of the government of the People's Republic of China. These areas of responsibility include authority to set policy, to control and manage national and local government affairs, and to select, appoint, remove and manage government and party officials. Defendant JIANG has used his authority in the Peoples Republic of China to organize and operate an illegal operation that imposes the most serious abuses of human rights standards on Falun Gong practitioners.

24.     More particularly, Defendant JIANG established the clandestine Office 6/10, as an elite branch of the Communist Party with the highest authority to monitor, investigate and persecute Falun Gong in June of 1999. The 6/10 Office, as a subdivision of the ruling party of China, which has control over but is not itself apart of the governing organs of the state, acts under color of law to pursue its campaign of persecution against Falun Gong. The office acts under the command and control of defendant JIANG. It employs and directs government officials and other public agencies such as media communications and law enforcement to carry out a campaign of murder, torture, terrorism, rape, beatings, and destruction of property against members of Falun Gong and their families.

25.     Under Defendant JIANG's mandate and direction, Defendant Office 6/10 has absolute power to set policy guidelines, design and implement programs, and establish norms which enable each national, city, and provincial level of administration in the Communist Party, the Public Security Ministry, each of the other Ministries (e.g., Ministries of National Security, Civil Affairs, Economy, Planning, Treasury, Health, Religion, Education), and other administrative organs to assist in the campaign to monitor, control, suppress, and eradicate the Falun Gong spiritual practice in China. It is the Office 6/10's duty and obligation under this mandate to appoint, discipline and remove those national, provincial, and city government officials who do not comply with the directives of their office, irrespective of the power and authority vested in them by the Constitution and laws of China. Its authority further encompasses not only the power to override the Constitution and laws in pursuit of the campaign of repression against Falun Gong, but the power to order the investigation and criminal indictment of any and all officials of government, or of the Communist Party, whatever their capacity, who fail to comply with the directives of their office. Its authority

further allows them to require national and local government officials to override any other laws, rules and regulations of China that might interfere with the carrying out of the directives of the Falun Gong Control Office and its mandate for suppression of the Falun Gong movement.

26.     Acting together Defendant JIANG and the OFFICE 6/10, as co-conspirators, direct the activities of all government and Communist party national and local officials, bureaus and units to accomplish the control, suppression and eradication of Falun Gong in China.

### III. GENERAL STATEMENT OF FACTS

27.     As the Chair of the Central Committee of the Chinese Communist Party, Chair of the People's Republic of China, and the Chair of the Central Military Committee of the People's Republic of China, Defendant JIANG began a national policy and campaign to seek the termination of the spiritual practices of Falun Gong and the extermination of its members, in June and July of 1999. This campaign was initiated, designed, authorized, and implemented by Defendant JIANG at the highest levels of the Communist Party and the government.  Defendant JIANG issued the initial order that banned the spiritual movement, declaring it and its practitioners unlawful, and subjecting its members to a cruel and abusive campaign of persecution aimed at the elimination of Falun Gong spiritual practice and practitioners in China.

28.     In July of 1999, Defendant JIANG abrogated the power and authority of the legislative branch (the National People's Congress) when he issued an edict declaring Falun Gong to be an illegal organization that represented a threat to the government and people of China, and which therefore must be brutally suppressed.  In July of 1999, Defendant JIANG abrogated the authority vested in the Ministry of Public Security when, upon information and belief, he ordered them to issue a list of unlawful prohibitions geared directly at Falun Gong, a list which, inter alia, made criminal the constitutional right to petition in defense of Falun Gong. In October of 1999, Defendant JIANG suborned the National People's Congress when, upon information and belief, he ordered them to adopt the "decision" to legitimize the crackdown by the retroactive passage of a series of laws targeting "evil cults."  These laws which do not mention Falun Gong by name, have been used not only to arrest and torture illegally persons who practice Falun Gong, but they have also been used to arrest and torture illegally Catholics, Tibetans, Protestants, and other Christian

sects, that like Falun Gong, are deemed to represent a threat to the hegemony and authority of the regime of Defendant JIANG Zemin.

29.     In June of 1999, Defendant JIANG established the clandestine 6/10 Office as part of the Central Committee of the Chinese Communist Party, which Defendant JIANG manages, directs, and controls, as its Chair. In his speech delivered on June 7, 1999 to the Standing Members of the Politburo of the Central Committee of the Chinese Communist Party, Chairman JIANG said, "after the leading group [Office 6/10] dealing with Falun Gong problems has been established within the Central Committee of the Chinese Communist Party, it should immediately organize forces, find out the organization system nationwide of Falun Gong as soon as possible, constitute the battling strategies, get fully prepared for the work of disintegrating Falun Gong, we should never launch a war without preparations. We must immediately find the head of Falun Gong, research his misdeeds and his international backgrounds, prepare material about him" See "Comrade Jiang Zemin's Letter Speech at the Meeting of the Political Bureau of the Central Committee of the Chinese Communist Party, June 7, 1999.

30.     The 6/10 Office was immediately established by the Central Committee of the Chinese Communist Party, under the mandate and direction of its chair, Chairman JIANG, at national and local levels as a subdivision of the Central Committee of the Communist Party and at the local and regional levels with branches within each province and city of the People's Republic of China. A Document issued by the Central Committee of the Chinese Communist Party of Taishan City, in Guangdong Province, is fairly typical of documents issued in other cities and provinces across China. In this document, the Central Committee of the Chinese Communist Party, establishes the operation of the Office 6/10 as a subdivision of the Central Committee of the Chinese Communist Party. Its duties and responsibly include: "to implement the decisions from the Central Committee of the Chinese Communist Party regarding preventing and dealing with Falun Gong and other evil cults, and other organizations that are harmful to society; ensure communication between upper and lower levels; gather information and understand the plan of Falun Gong and other evil cults and other organizations that are harmful to society; summarize relevant information and report major issues; Coordinate relevant departments to carry out social propaganda activities against evil cults; and carry out other assignments given by the Chinese Communist Party City Committee and upper level 6/10 offices.

31.     Since its inception, Defendant Office 6/10, in concert with Defendant JIANG and the Central

Page 15

Committee of the Communist Party has directed, organized, orchestrated and implemented the persecution of Falun Gong across China. Their role in the city of Beijing is highly typical of their role elsewhere in China. Abuses committed by police and security forces in Beijing - in addition to those committed by high-ranking government officials, members of the judicial and other government agencies and organs - have been directed, managed, ordered, mandated, sanctioned and designed by the national and city offices of Office 6/10. According to an Amnesty International Briefing (3 September 2001 AI Index: ASA 17/028/2001), "the 6/10 office has issued unwritten instructions allowing police and other officials to go beyond legal constraints in this campaign, discharging them of legal responsibility if a Falun Gong practitioner dies in detention due to beatings. " According to an Washington Post article (Sunday, August 5, 2001,) "China Systematically Eradicating Group," Beijing's 6/10 office ordered all neighborhood committees, state institutions, and companies to begin to use brainwashing classes, to send active members of Falun Gong to labor camps where they are first "broken' by beatings and other torture. At the same time, this article also reports, the 6/10 office is getting more efficient at forcing local officials to carry out its orders on Falun Gong; they dispatch teams to local officials to ensure a "proper attitude" toward Falun Gong in Beijing (and elsewhere in China). Similarly in the province of Shanghai, officials from the Shanghai 6/10 Office ordered police to arrest large numbers of Falun Gong practitioners and detain them in "re-education" classes. The campaign was to be carried out in the name of national security and in coordination with a nationwide initiative to employ "re-education" classed. Over 100 female Falun Gong practitioners were detained in a women's labor camp. As a result, at least dozens of male practitioners were also forced into "re-education through labor" camps. In addition to the arrests, arbitrary detention, torture in police precincts and detention centers, forced-feeding in hospitals, and further abuse in psychiatric hospitals, many practitioners have died in Shanghai while in police custody.

32. The Liao Ning and Heilongjiang Provinces are known to be among the most repressive and abusive jurisdictions in China as regards the arrest and treatment of Falun Gong practitioners. Since President JIANG's order banning the Falun Gong movement and calling for suppression of their practitioners issued on July 20, 1999, and the establishment of 6/10 offices in both provinces, at least 27 Falun Gong practitioners have died from torture inflicted in labor camps and detention centers in Liao Ning Province, and 29 have died from torture inflicted by camps in Heilongjiang Province. These are the two highest death tolls of Falun Gong detainees of any of the Provinces in China.

Page 16

Masanjia Labor Camp, located in Shenyang City, the capital of Laio Ning Province, is one of the most notorious prison labor camps in the country that is heavily used to incarcerate and torture Falun Gong practitioners. Four hundred and twenty seven Falun Gong practitioners were reported to be detained in this prison labor camp in June of 2000.

33.     Together, Defendant JIANG and Defendant Office 6/10 direct the activities of all    government and Communist Party national and local officials, bureaus and units to accomplish the control, suppression and eradication of Falun Gong in China. For example, in June of 1999, Defendants JIANG appointed Ding Guangem, Minister of the Office of Propaganda, as one of three directors of the National Office of the Office 6/10, thereby facilitating the Office 6/10's control over the all media and propaganda activities of the nation. Since that time, Defendant JIANG and the Office 6/10 have supervised a large-scale, national media and propaganda campaign directed against the Falun Gong and its practitioners. One of their main goals has been to spread lies and misinformation about Falun Gong to explain, justify and motivate the harshly repressive actions that have taken place, including massive arrests, widespread torture, and a substantial number of executions, while in police custody, who practice Falun Gong.

34.     One important part of the media campaign was the government's staging of the immolation of five actors in Tiananmen Square. This was done in a way to convince the citizens of the China that it was not a staged immolation but real. As a result of this government campaign, many persons in China have been convinced that practitioners of Falun Gong would engage in self-destructive and bizarre actions.

35.     By April, 2001, in his capacity as Secretary General of the Central Committee of the Chinese Communist Party, Defendant JIANG had developed and instituted a harsher and even more highly organized and systematic campaign of state-sanctioned violence against Falun Gong. The methods used under this campaign of heightened repression and violence. They included even more widespread arrests and torture by local police, more extensive use of detentions at reform-through-labor detention centers, holding families responsible for actions of other family members through use of economic sanctions, the withholding of salaries and retirement pay, refusing promotions, health care and education benefits, and other arbitrarily imposed punishments.

36.     The Defendants also implemented a new propaganda campaign as part of these increased repressive efforts, replete with condemnations and denunciations of the Falun Gong spiritual movement and its practitioners from every sector of Chinese society. An August 2001 *Washington Post* News Service article entitled "Torture Is Breaking

Page 17

Falun Gong" described these even more extensive anti-Falun Gong suppression activities as consisting of three major elements. First and foremost was to increase the use of police brutality as a method for punishing and intimidating practitioners who refused to renounce their belief. Second, was the more widespread and systematic use of compulsory "study sessions," to force practitioners of Falun Gong to abandon and denounce their beliefs. Third, a new and more intense propaganda campaign was instituted to create the climate of hatred and public condemnation to support the application of more violent sanctions on Falun Gong practitioners.

37.     Defendant OFFICE 6/10 played a major role organizing and carrying out this harsher policy. Directives issued by the OFFICE 6/10 given to the local police, prison guards, and other government personnel mandated a heightened campaign of arbitrary detention, torture, sexual assault, and even murder against Falun Gong practitioners. In all types of detention facilities, including holding cells in local police precincts, detention centers, prisons, jails, labor camps, and mental hospitals, violence and torture has become a daily tool utilized to silence and suppress practitioners of Falun Gong. These violations include physical assault, force feeding with hot pepper or high-density salt water, denial of food, sleep and bathroom facilities, exposure to extreme hot and cold weather, burning with cigarettes and heated metal, and the administration of shocks with electric batons. Women practitioners have suffered especially an array of sexual assaults that include rape, forced abortions, and placement of electrical discharge devices in genital areas.

38.     Since July of 1999, on the national level it is estimated by Falun Info Net, that over 100,000 practitioners have been arbitrarily and unlawfully arrested and detained in prison facilities simply because of their beliefs, associations and activities related to the Falun Gong. It is estimated that more than 500 of these detainees have been sentenced to prison terms of up to 18 years, with 1,000 more improperly assigned to mental hospitals to deal with practitioners by the use of involuntary medical treatment for political purposes unrelated to medical needs that is widely condemned by the international medical community, and that violates specific provisions of international human rights treaties. It is estimated that over 20,000 practitioners have been sent illegally to prison labor camps without trial. At least 361 deaths of detainees have occurred as a result of torture inflicted while they were in the custody of law enforcement or prison personnel. The United States Department of State Annual Report on International Religious Freedom for 2001 confirms that over 200 deaths of Falun Gong practitioners have occurred as a result of torture

Page 18

inflicted while in detention and subject to the authority of police and prison officials. Numerous other practitioners have been tortured solely because of their spiritual belief and social support of Falun Gong.

39.     The extent and seriousness of the persecution and abuse that is targeted against    Falun Gong practitioners, and their supporters, at both the national level, and local levels throughout China have been confirmed and extensively documented by the U.S. Government in its Country Reports on Human Rights Practices, and most especially in its Annual Reports on International Religious Freedom, as well as in reports issued by non-governmental human rights monitoring groups such as Amnesty International and Human Rights Watch.  For example, the just issued Annual Report on International Religious Freedom for 2001, issued by the U.S. Department of State in December, 2001, includes numerous specific references to the major human rights abuses and violations being committed against Falun Gong practitioners in an effort to eliminate them and totally eradicate the presence of Falun Gong in China.  The report describes the "crack down" against the Falun Gong as tied to the Government of China's effort "to control and regulate religious groups to prevent the rise of groups or sources of authority outside the control of the Government and the Chinese Communist Party." (page 122)  It notes that "approximately 100 or more Falun Gong adherents have died in detention since 1999" (p.122); that "many of their bodies reportedly bore signs of severe beatings and/or torture;" that "many thousands of individuals are serving sentences in reeducation-through-labor camps;" that "hundreds of its practitioner have been confined to mental hospitals;" that "there have been numerous credible reports of unrepentant Falun Gong practitioners being confined in psychiatric institutions;" that "police often used excessive force when detaining peaceful Falun Gong protesters, including some who were elderly or who were accompanied by small children;" and that "torture (including by electric shock and by having hands and feet shackled and linked with crossed steel chains)" was widely reported (page 131).  The State Department Report also notes that in "September 2000 the Secretary of State designated China a country of particular concern under the International Religious Freedom Act for particularly serious violations of religious freedom," including its treatment of Falun Gong practitioners. (p. 133).

40.     Defendant JIANG has served as Secretary General of the Central Committee of the Chinese Communist Party, since September 7, 1997. As such, he has exercised command authority over the clandestine operation of the Office 6/10, at both national and local - city and province - levels. Defendant JIANG was primarily

and solely responsible for creating the Office 6/10 with its mandate to solve the Falun Gong problem in China. He issued an edict unlawfully making the practice of Falun Gong illegal in China in direct violation of the Constitution which not only gives the National Congress the sole right to pass such laws, but also assures all citizens the right to religious freedom, freedom of belief, association and peaceful expression. Since that time, and as reflected in numerous speeches, he has continued to play a critically important role in the continued commission of human rights abuses against Falun Gong in China.

41.     Defendant JIANG served as the primary official responsible for the campaign of persecution against Falun Gong, in concert with other high-ranking officials of the People's Republic of China. Under Chinese law and international law, Defendant JIANG had a duty to ensure that high-ranking officials - in Office 6/10 as well as other organs of the Government and Party - not engage in abuses of the rights of citizens and visitors of China. As Chair of the Central Committee of the Chinese Communist Party, Defendant JIANG is obliged by the Charter of the Central Committee of the Chinese Communist Party (Article 19, 9.29.1994) to select and appoint officials to the most important posts in China, and to manage, supervise, and direct their behavior. By Article four, chapter one of the Charter of the Chinese Communist Party (amended at the 15th National Congress of the Central Communist Party), he is further obliged to criticize and report the unlawful behavior of Communist Party officials. As Chair of the People's Republic of China, by Article 80 of the Constitution, Defendant JIANG 's duties also include appointing and removing important government officials. Like all public officials, by the Preamble to the Constitution, Defendant JIANG is further required to uphold the Constitution and Chinese law, which includes the protection of civil, democratic and other rights and freedoms of the citizens of China. These responsibilities have been violated in the process of organizing and carrying out the campaign of persecution against Falun Gong.

42.     At all times relevant to this complaint, on information and belief, Defendant Office 6/10 acting under the direction of and in conspiracy with Defendant JIANG, in direct violation of the rule of law actively participated in formulating and carrying out the policy and program that resulted in the acts of arbitrary arrest and detention, torture, murder, and genocide that form the basis of this complaint. This occurred at national and local levels, in all cities, provinces, labor camps, detention centers, psychiatric and medical hospitals - always under the mandate, orders, supervision and design of Defendant JIANG and Defendant Office 6/10.

Page 20

43. Consistent with the general description and documentation of the serious infringement of human rights that were carried out against Falun Gong practitioners throughout China, each of the Plaintiffs and their families suffered very concrete injuries and losses as a result of the actions of the Defendants and other municipal, provincial and national government officials aimed at exterminating Falun Gong spiritual practice and its practitioners.

44. In addition to organizing and carrying out a campaign of torture, genocide and other gross violations of international human rights directly against all persons who embrace the spiritual practice of Falun Gong in China, the Defendants extended their efforts to discredit and marginalize Falun Gong to other countries. Defendant Office 6/10 and other unidentified entities and officials in China, operating under the instruction of Defendant JIANG and in conspiracy with him, compiled a list of suspected Falun Gong "members" and supporters living abroad with the intention and purpose of using this list to harm and discredit those whose names appeared on the list, and to discredit the spiritual practice of Falun Gong, more generally.

45. In June of 2002, Defendants and other unidentified Chinese officials conspired to circulate this list to the Government of Iceland and a number of other governments throughout the world and to encourage those governments to restrict travel and movement of the individuals on this list. In particular, the Defendants and other unidentified co-conspirators urged those governments to prevent listed individuals from traveling to Iceland on and around June 12 through June 18 of 2002 in order to present during the official state visit of Defendant JIANG to their country so that they might engage in peaceful meditative vigil to bring international attention to the Defendant's role in the campaign of persecution, torture, genocide against Falun Gong in China. Those efforts, in fact, resulted in the Government of Iceland circulating the Falun Gong "black list" to Icelandair airlines and instructing them to not permit passage to Iceland on Icelandair airlines to those whose names were on the list. As a result, well over a hundred individuals residing in the United States, the great majority of whom are alien residents, whose names appeared on the "blacklist" and who had reserved and paid for passage on Icelandair flights, were denied passage by Icelandair, and were subjected to extreme embarrassment and mistreatment when they arrived at airports throughout the United States to board their flights to Iceland. Many of them were shown copies of the "blacklist' that had been compiled and circulated by the Defendants and were told that this was the reason why their tickets for passage on Icelandair flights were abruptly and arbitrarily cancelled. A number of other aliens residing in the United States, who are practitioners

Page 21

of Falun Gong, whose transportation to Iceland were not cancelled found themselves arbitrarily detained by Iceland customs and security personnel when they arrived in Iceland, questioned about their spiritual beliefs, and association and "affiliation" with Falun Gong, and held in custody for varying amounts of time in order to keep them from participating in peaceful meditative sessions and protests in Iceland directed at the visit of Defendant JIANG to that country.

46.    These restrictive and damaging policies and practices, directed against residents and citizens of the United States and other countries outside of China, were organized and carried out by, and under the direction and supervision of, Defendant JIANG and Defendant Office 6/10, to the injury of a number of Falun Gong practitioners and supporters residing in the United States.

## IV.SPECIFIC CAUSES OF ACTION CONSTITUTING VIOLATIONS OF HUMAN RIGHTS STANDARDS AND INTERNATIONAL LAW AND VIOLATIONS OF THE CIVIL RIGHTS OF U.S. RESIDENTS

47.    The following specific abuses, constituting torts involving the most serious forms of intentionally inflicted physical and mental suffering and injury, were inflicted upon the plaintiffs as a direct result of the actions of the Defendants and those with whom they conspired to carry out the officially sanctioned and mandated policy of persecuting, punishing, intimidating, and eliminating Falun Gong practitioners, and the Falun Gong spiritual practice in China. Each of these types and forms of abuse also constituted violations of international law embodied in treaties and in customary international practice, binding on both the United States and the Government of the Peoples' Republic of China as indicated and explained in each paragraph below, thereby bringing these torts within the terms of the Alien Tort Claims Act and the Torture Victims Protection Act, as indicated above in paragraphs 3 through 6 in the Jurisdiction Section of this complaint. They were carried out by the Defendants and the other officials with whom they conspired, acting in their official capacity and/or under color of law, with the specific intent and purpose of abridging and denying the Plaintiffs of their internationally protected human rights, and punishing, intimidating and coercing, and in numerous cases, executing them for the exercise of those rights, in violation of international law. Some of the enumerated violations (paragraphs 44 through 46) also constitute violations of 42 U.S.C. section 1985.

### A. FIRST CAUSE OF ACTION: TORTURE

48.     The Convention Against Torture, which came into effect internationally on June 26, 1987, and was ratified by the United States on October 21, 1994 and implemented and given domestic effect by Congress through legislation adopted in 1994 and 1998, and ratified by the Government of China on October 4, 1998, prohibits the intentional infliction of "severe pain or suffering, whether physical or mental" for any purpose, including but not limited to punishment, intimidation or coercion. The infliction of torture was the first type of human rights violation that U.S. courts recognized as authorizing the granting of relief under the Alien Tort Claims Act, in the landmark case of *Filartega v. Pena-Irala*, 630 F.2d 876 (2d Cir. 1980).     Torture also is prohibited absolutely under other international instruments and treaties and under customary international law, including Article 5 of the Universal Declaration of Human Rights, and Article 7 of the International Covenant on Civil and Political Rights. The latter treaty came into effect internationally on March 23, 1976, and was ratified by the U.S. on June 8, 1992, and by the Government of the Peoples' Republic of China on October 5, 1998. The Universal Declaration is not a treaty, but a unanimously adopted resolution of the General Assembly of the United Nations that is widely recognized as an embodiment of fundamental and universally accepted standards of customary international law. The abusive practices imposed upon the Plaintiffs and other Falun Gong practitioners in detention, including beatings, prolonged periods of restraint and denial of food, water and sleep, as well as the use of instruments of torture, and being forced to witness the torture of others, as described by Plaintiffs in paragraphs thirteen through eighteen, and twenty three through twenty six of this complaint, constitute severe pain and suffering under the meaning of the Convention Against Torture and the other international instruments, and thereby constitute violations of international law under the terms of the Alien Tort Claims Act and the Torture Victims Protection Act, 28 U.S.C. section 1350.

49.     As has been extensively documented by the U.S. Department of State in its Country Reports on Human Rights and its Reports on International Religious Persecution, China has engaged in a consistent and widespread pattern and practice of subjecting Falun Gong practitioners to torture while in detention. Plaintiffs A, B, C, D, E, F have provided specific examples of how they have been subjected to torture, and have suffered physical and psychological injuries as a result of these practices that the Defendants and government officials with whom he has

conspired have promoted and supported (see paragraphs thirteen through eighteen, and twenty three through twenty six.).

### B. SECOND CAUSE OF ACTION: GENOCIDE

50.     Genocide is prohibited under the Convention on the Prevention and Punishment of the Crime of Genocide (referred to as the Genocide Convention), which entered into force internationally on 12 January 1951, and was ratified by the U.S. on November 25, 1988, and by the Peoples' Republic of China on April 18, 1983.  Genocide is defined in the Convention as intentional actions taken "to destroy, in whole or in part, a national, ethnical, racial or religious group" through such means as "killing members of the group; causing serious bodily or mental harm to members of the group, and deliberately inflicting on the group conditions of life calculated to bring about its physical destruction in whole or in part...."  (Article II)(a) through ©))   The actions of the Defendants and the government officials with whom they conspired meet this definition because they consisted of an officially condoned, instituted and intentionally inflicted policy and practice of inflicting serious bodily harm, resulting in a number of cases death while in detention, against members of a spiritual group aimed at punishing, intimidating and coercing them because of their religious and spiritual beliefs, associations and practices, with the ultimate aim of elimination of the Falun Gong spiritual movement and its practitioners.

### C. THIRD CAUSE OF ACTION: THE RIGHT TO LIFE

51.     Article 6 of the International Covenant on Civil and Political Rights, which came into force internationally on 23 March 1976, and was ratified by the United States on June 8, 1992, and by the Peoples' Republic of China on October 5, 1998, confirms that "Every human being has the inherent right to life" and that "No one shall be arbitrarily deprived of his life."  This same principle is set out in Article 3 of the Universal Declaration of Human Rights, a United Nations' General Assembly Resolution unanimously adopted on 10 December 1948, and now interpreted as the clearest embodiment of the universal standards of human rights enshrined in customary international law.  As indicated above, an extraordinarily large number of Falun Gong practitioners, confirmed to be over 200 100 in slightly over two years according to the U.S. Department of State, have died in detention under

Page 24

conditions that the U.S. Department of State has confirmed were likely linked to their torture. These executions through torture can be directly attributable to the orders of harsh suppression issued by Defendant JIANG and Defendant Falun Gong Control Office.

### D. FOURTH CAUSE OF ACTION: THE RIGHT TO LIBERTY
### AND SECURITY OF THE PERSON, AND TO BE FREE OF ARBITRARY ARREST AND IMPRISONMENT

52.    The right to liberty and security of the person is guaranteed by Article 3 of the
Universal Declaration of Human Rights, and Article 9 of the Covenant on Civil and Political Rights. Article 9 of the Covenant also stipulates that "No one shall be subjected to arbitrary arrest or detention" or "deprived of his liberty" except according to lawful procedures. Also of special relevance to the tort damage complaint that has been brought before this Court by the Plaintiffs, Article 9 stipulates that "Anyone who has been the victim of unlawful arrest or detention shall have an enforceable right of compensation." (Article 9(5)) The U.S. Department of State Report on International Religious Freedom for 2001 confirmed that, "During the period covered by this report ... there were many thousands of cases throughout the year of individuals receiving criminal, administrative, and extra judicial punishment for practicing Falun Gong, admitting that they believed in Falun Gong, or simply refusing to denounce the organization or its founder," (p. 125) with "as many as 300 practitioners ... sentenced to prison terms of up to 18 years for their involvement in Falun Gong," and "many thousands of individuals are serving sentences in reeducation-through-labor camps." (p. 1313) The State Department report indicates that between 1998 and 1999, the Law Yearbook of China (an official publication) indicated a dramatic increase in arrests for "disturbing the social order," from 76,500 to over 90,000, with the increase "primarily ... due to the Government's crackdown, begun in mid-1999, on ... groups like Falun Gong...." (p. 129) The arbitrary arrests and detentions described by the Plaintiffs in this complaint are indicative of the type of arbitrary administration of justice that has been imposed by the Defendants in concert with other high ranking officials on Falun Gong practitioners, resulting in the arbitrary deprivation of liberty, and often serious injuries and deaths.

### F. SIXTH CAUSE OF ACTION: THE FREEDOM OF THOUGHT,

***CONSCIENCE AND RELIGION, AND THE FREEDOM TO HOLD OPINIONS WITHOUT***

***INTERFERENCE AND TO ASSOCIATE FREELY.***

53.     The right to "freedom of thought, conscience and religion," and the right to hold
opinions without interference and to associate with others freely, are enshrined in Articles 18, 19 and 20 of the
Universal Declaration, and Articles 18, 19 and 22 of the International Covenant on Civil and Political Rights. As
enumerated in the preceding sub-paragraphs, and in the U.S. Department of State Reports on International Religious
Freedom and Country Reports on Human Rights, these internationally recognized rights and protections have been
seriously infringed by the Defendants' policies and actions banning the Falun Gong, and seeking the repression,
punishment and intimidation of their practitioners in order to end the movement. This "harsh" and "unremitting
campaign against Falun Gong" has included assigning "many thousands" to "re-education through labor camps" and
other "facilities specifically established to 'rehabilitate' practitioners who refuse to recant their belief voluntarily." (p.
129-131, State Dept. Report on International Religious Freedom for 2001). Each of the identified Plaintiffs in this case
have indicated how their arrest, detention and punishment, including torture and sexual abuse, took place because of
their adherence to Falun Gong beliefs or practices, and their refusal to give up these beliefs.

***G. SEVENTH CAUSE OF ACTION: VIOLATIONS OF THE ABOVE-CITED RIGHTS  AND***

***PROTECTIONS AS EMBODIED IN CUSTOMARY INTERNATIONAL LAW***

54.     Each of the above-cited violations of international treaty-based law also involve the abridgement and
violation of the same rights protections enumerated in sub-sections A through F (above) as embodied in customary
international law.  It is well established that the enumeration of these types of universally recognized rights and
protections in specific treaties do not remove them from coverage by customary international law, but merely provide
an additional treaty-based framework recognizing their internationally protected status.  This distinction, and the
additional coverage by international customary law, are important, since they provides a basis for requiring compliance
with universally accepted human rights standards by all nations and governments, whether or not they have specifically
ratified individual human rights treaties. For example, in *Filartega v. Pena-Irilla*, 630 F.2d 876 (2d Cir. 1980), U.S.
courts found it possible to apply the prohibitions against torture as a basis for an Alien Tort Claims Act complaint

based on customary international law as well as the treaties embodying the same anti-torture standards.

## H. EIGHTH CAUSE OF ACTION: CONSPIRACY TO COMMIT
## VIOLATIONS OF CIVIL RIGHTS WITHIN THE JURISDICTION OF THE U.S.

55.     In addition to their tort actions constituting violations of international law, Defendants also conspired together and with others to deprive a number of individual in the United States of their civil rights, in violation of 42 U.S.C. 1985. Specifically, and in conjunction with, and in support of, this campaign of repression against the Falun Gong in China, the Defendants extended their effort to persecute and intimidate Falun Gong practitioners, and to restrict their right to protest against Chinese Government policies of repression and torture, to practitioners here in the United States and other Western nations. Defendants, as an integral part of their campaign of persecution and discreditation of Falun Gong spiritual practice and its practitioners in China, compiled a list of known practitioners and supporters of Falun Gong in other countries and circulated this list as part of a campaign to prevent supporters and practitioners from traveling to Iceland and other nations to protest peacefully the appearance in those countries of the Defendants and other Chinese officials engaging in the campaign of persecution against Falun Gong. For example, in connection with the visit of Defendant JIANG to Iceland in June of 2002, the Defendants gave this list, which they had already compiled, to the Government of Iceland and to Icelandair, as well as to the Icelandic Parliament, with a formal request from the Government of China that Falun Gong practitioners be prevented from coming into the country. This list, and the request of the Government of China played a substantial role in causing the infliction of damages and violations of law described in this complaint. There are numerous reports that this or a similar list of practitioners was used by the Chinese Government as early as May 7, 2001 to seek to prevent the entry of practitioners into Hong Kong during a visit there by President Jiang.

55.     These torts committed in the United States, constitute violations of the civil rights of the U S. citizens and alien residents living in the U.S. in violation of 42 U.S.C. section 1985, including the right to travel, the right to freely hold, observe, and exercise spiritual beliefs, the right to associate freely with others, and the right to exercise fundamental freedom of speech and expression. For the majority of those whose names appeared on the Falun Gong

"blacklist" compiled by the Defendants, who are alien residing in the United States, those actions constituted violations of both 42 U.S.C. section 1985, and the Alien Tort and Torture Victims Protection Act.

## V. PRAYER FOR RELIEF

56.    Based on the above facts, jurisdictional claims and legal arguments, Plaintiffs, on behalf of themselves and others similarly situated, ask for judgment against the Defendant as follows:

1. For compensatory damages according to and consistent with the injuries described, the extent of which will be demonstrated according to evidence to be presented;

2. For punitive and exemplary damages according to and consistent with the extraordinary and gross nature of the Defendant's conduct and the injuries it produced, the extent of which will be demonstrated according to evidence to be presented;

3. For a declaratory judgment confirming the unlawful nature of the pattern and practice of gross violations of human rights that have taken place, and that the Defendants played a material part, in concert with other high-level officials in China, in planning and carrying out these policies and practices, with the result of serious and permanent injury of the Plaintiffs;

4. For injunctive relief, consistent with the jurisdiction of this Court, prohibiting further unlawful action resulting in serious and permanent injury to the Plaintiffs and others in the class whom they represent;

5. For such other relief as the Court may deem suitable and necessary; and,

6. For reasonable attorneys' fees and costs associated with these proceedings, including service of process and providing proof of the tort actions committed and the nature and extent  of the injuries they have produced, establishing and carrying out the class action elements of the case, taking particular account of the attorney fee authorization in 42 U.S.C. section 1985.

## DEMAND FOR JURY TRIAL

Pursuant to the requirements of Rule 38(b) of the Federal Rules of Civil Procedure, a jury trial is demanded for this case.

Dated: _October 18, 2002_

Respectfully submitted,

_Frederick S. Rhine_

FREDERICK S. RHINE
Gessler, Hughes, Socol, Piers, Resnick,
 & Dym Ltd.
Three First National Plaza
Suite 2200
70 West Madison Street
Chicago, IL 60602
312-580-0100
Fax: 312-580-1994


_Terri E. Marsh_

Terri E. Marsh, Esq.
3133 Connecticut Avenue NW
Suite 608
Washington DC 20008
202-369-4977
Fax: 202-232-9411
(pro hac vice)

Page 29

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

## Civil Cover Sheet

**02C 7530**

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Northern District of Illinois.

**JUDGE KENNELLY**

**MAGISTRATE JUDGE LEVIN**

**Plaintiff(s): PLAINTIFFS A, B, C, D, E, F, and OTHERS SIMILARLY SITUATED, WEI YE, and HAO WANG,**

**Defendant(s):JIANG ZEMIN and FALUN GONG CONTROL OFFICE (A.K.A. OFFICE 6/10),**

County of Residence: Philadelphia County, PA

County of Residence:

Plaintiff's Atty:  Matthew J. Piers, Frederick S. Rhine
Gessler, Hughes, Socol, Piers, Resnick & Dym, Ltd.
3 First Nat'l Plaza, Suite 2200, Chicago, IL 60602
312/580-0100

Defendant's Atty:

**DOCKETED**
**OCT 24 2002**

**FILED UNDER SEAL**

**FILED-ED4**
**2002 OCT 18 PM 4: 11**
**CLERK, U.S. DISTRICT COURT**

II. Basis of Jurisdiction:  **3. Federal Question (U.S. not a party)**

III. Citizenship of Principal Parties (Diversity Cases Only)
Plaintiff:- **N/A**
Defendant:- **N/A**

IV. Origin :  **1. Original Proceeding**

V. Nature of Suit:  **440 Other Civil Rights**

VI.Cause of Action:  **Alien Tort Claims Act; Torture Victims Protection Act; 42 U.S.C. section 1985**

VII. Requested in Complaint
Class Action: **Yes**
Dollar Demand:
Jury Demand: **Yes**

VIII. This case **IS NOT** a refiling of a previously dismissed case.

Signature: _Frederick S. Rhine_

Date: _October 18, 2002_

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

**DOCKETED**
OCT 2 4 2002

In the Matter of

**PLAINTIFFS A, B, C, D, E, F, and OTHERS SIMILARLY SITUATED, WEI YE, AND HAO WANG v. JIANG ZEMIN and FALUN GONG CONTROL OFFICE (A.K.A. OFFICE 6/10)**

Case Number:

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

**02C 7530**

**PLAINTIFFS**

JUDGE KENNELLY

MAGISTRATE JUDGE LEVIN

| (A) | | | (B) | | |
|---|---|---|---|---|---|
| SIGNATURE _Matthew J Piers_ | | | SIGNATURE _Frederick S. Rhine_ | | |
| NAME Matthew J. Piers | | | NAME Frederick S. Rhine | | |
| FIRM Gessler Hughes Socol Piers Resnick & Dym, Ltd. | | | FIRM Gessler Hughes Socol Piers Resnick & Dym, Ltd. | | |
| STREET ADDRESS 70 West Madison, Suite 2200 | | | STREET ADDRESS 70 West Madison, Suite 2200 | | |
| CITY/STATE/ZIP Chicago, IL 60602 | | | CITY/STATE/ZIP Chicago, IL 60602 | | |
| TELEPHONE NUMBER 312/580-0100 | FAX NUMBER 312/580-1994 | | TELEPHONE NUMBER 312/580-0100 | FAX NUMBER 312/580-1994 | |
| E-MAIL ADDRESS mpiers@ghsltd.com | | | E-MAIL ADDRESS frhine@ghsltd.com | | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 02206161 | | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6194079 | | |
| MEMBER OF TRIAL BAR? | YES ☒ | NO ☐ | MEMBER OF TRIAL BAR? | | |
| TRIAL ATTORNEY? | YES ☒ | NO ☐ | TRIAL ATTORNEY? | | |
| | | | DESIGNATED AS LOCAL COUNSEL? | | |
| (C) | | | (D) | | |
| SIGNATURE | | | SIGNATURE | | |
| NAME | | | NAME | | |
| FIRM | | | FIRM | | |
| STREET ADDRESS | | | STREET ADDRESS | | |
| CITY/STATE/ZIP | | | CITY/STATE/ZIP | | |
| TELEPHONE NUMBER | FAX NUMBER | | TELEPHONE NUMBER | FAX NUMBER | |
| E-MAIL ADDRESS | | | E-MAIL ADDRESS | | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | |
| MEMBER OF TRIAL BAR? | YES ☐ | NO ☐ | MEMBER OF TRIAL BAR? | YES ☐ | NO ☐ |
| TRIAL ATTORNEY? | YES ☐ | NO ☐ | TRIAL ATTORNEY? | YES ☐ | NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ☐ | DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ☐ |